FILED

2006 Jul-07  AM 07:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **ANTHONY PIPPENS,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | **Case No. 2:03-CV-3352-VEH** |
| **v.** | } | |
| | } | |
| **MIKE HALE, as Sheriff of** | } | |
| **Jefferson County, Alabama, et.** | } | |
| **al.** | } | |
| | } | |
| **Defendants.** | } | |
| | } | |
| | } | |

## OPINION

This Court has before it the September 30, 2005 motion of Defendant Mike

Hale, as Sheriff of Jefferson County, Alabama, et al. ("Defendant") for summary

judgment as to Plaintiff Anthony Pippens's race discrimination claims.  (Doc. 57).

 For the reasons set forth below, Defendant Hale's  motion for summary judgment is

due to be granted as to Plaintiff's race discrimination and retaliation claims under

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., as amended by

the Civil Rights Act of 1991, 42 U.S.C. §1981, and the First and Fourteenth

Amendments.

## I. Procedural History

_____This is a civil action, filed originally by Plaintiffs Anthony Pippens, Byron K. Deramus, Wilbert Miller, Jr., James E. Perry, Felicia T. Rucker, and Curtis Williams against the Defendants, the Jefferson County Sheriff's Department and Mike Hale in his individual and official capacities as the Sheriff of Jefferson County. The initial Complaint in this case was filed on December 19, 2003. On May 13, 2004, Judge Lynwood Smith severed the action into six individual cases.[1]   The Amended Complaint, filed on February 25, 2004, adds as Defendants the Jefferson County Commission and Jefferson County, Alabama and abandons Plaintiff's outrage claim. The Amended Complaint[2] also alleges three Counts against the Defendants for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (Count I); violation of 42 U.S.C. §§ 1981 and 1981(a) through section 1983 (Count II); violation

---

[1] The actions of Plaintiffs Williams, Miller, and Rucker are the subject of separate pending summary judgment motions before this Court. The actions of Plaintiffs Deramus and Perry were dismissed with prejudice by Judge Blackburn on August 2, 2005 and October 24, 2005 respectively. The present action is brought by Plaintiff Anthony Pippens.

[2] The Plaintiff's Amended Complaint abandons his outrage claim that was asserted in his original complaint. "An amended pleading completely supersedes the original pleading, and once a pleading is amended, the only issues before the [c]ourt are the ones raised in the text of the amended pleading." Angel v. United States of America, 2005 WL 3087869, at 1(M.D. Fla. Nov. 17, 2005);  See also Fritz v. Standard Life Ins. Co., 676 F.2d 1358 (11th Cir. 1982) (finding that an amended complaint under the Federal rules supercedes the original complaint). Therefore, this Court does not consider Plaintiff's outrage claim as a claim before this Court.

of the Plaintiff's rights to equal protection (Count III); and violation of 42 U.S.C. §
1981 and 42 U.S.C. § 1983 for retaliation in violation of plaintiff's First Amendment
right to political association (Count IV).[3]

Plaintiff Pippens's claims against Sheriff Hale in his individual capacity have
been dismissed.  (May 13, 2004, Order entered by Judge Lynwood Smith, CV-03-S-
3352-S, doc. 30 (before cases were severed); doc. 38, Order entered by Judge
Hopkins, November 11, 2004).  Plaintiff Pippens's Title VII, § 1981, § 1983, and
First and Fourteenth Amendments claims against Defendant Hale in his official
capacity are the sole remaining claims.

On September 22, 2005, Defendant filed a motion for summary judgment with
the court asserting (1) since Plaintiff has not alleged direct evidence showing that
Sheriff Hale discriminated against him, Plaintiff must prove his case through
circumstantial evidence, using the familiar burden-shifting framework established in
McDonnell Douglas v. Green, 411 U.S. 792 (1973) (Def's Mot. for Sum. Judg. 14);

---

[3] On May 13, 2004, Judge Smith entered an order (doc. 30) dismissing with prejudice the
action against the Jefferson County Sheriff's Department.  This action was reassigned to Judge
Hopkins on June 28, 2004.  The Defendants Jefferson County, AL and Jefferson County
Commission renewed their motion to dismiss the Plaintiff's claims. (doc. 39) Plaintiff Pippens
and Defendant Jefferson County Commission jointly moved the Court to dismiss the Jefferson
County Commission as a party defendant with prejudice.  (doc. 45).  This Court granted the joint
motion on June 9, 2005.  Plaintiff Anthony Pippens and Defendant Jefferson County jointly
moved the Court to dismiss Jefferson County as a party defendant with prejudice.  (doc. 48).
This Court granted the joint motion on July 25, 2005.  Thus, Sheriff Hale is the only remaining
defendant.

(2) that Plaintiff has not established a prima facie case to show that he was subjected to any adverse employment action or that persons outside the protected class were treated more favorably (Def.'s Mot. for Sum. Judg. 14); and (3) even if plaintiff could somehow establish a prima facie case of race discrimination based on his reassignment to the Birmingham Jail, Defendant can state a legitimate, non-discriminatory reason for this reassignment.(Def.'s Mot. for Sum. Judg. 14).

The Defendant submitted evidence[4] in support of his motion for summary judgment and filed a supporting brief on September 22, 2005.[5]

## II. Standard of Review

### A. Summary Judgement

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for

---

[4] Defendant submitted the (1) affidavit of Sergeant Mike Lindon; (2) personnel action form; (3) administrative personnel order; and (4) Jefferson County Sheriff's Office Birmingham Corrections Captains List. Defendant's Motion for Summary Judgment was not opposed by Plaintiff.

[5] This Court originally denied the Defendant's motion for summary judgment on October 12, 2005. (Doc. 59). The Defendant filed a motion to reinstate the Defendant's motion for summary judgment on February 6, 2006. (Doc. 60). This Court granted the Defendant's motion to reinstate the Defendant's motion for summary judgment on February 7, 2005. (Doc. 61).

summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  Celotex, 477 U.S. at 322-23.  In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party.  Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996).

Once a moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 234 (quoting Fed. R. Civ. P. 56(e)).  "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'"  Info. Sys. & Networks Corp. v. City of Atlanta, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1437 (11th Cir. 1991)).

## B.  Unopposed Motion for Summary Judgment

The nonmovant has not opposed the motion for summary judgment in the instant action.  However, "the district court cannot base the entry of summary judgment on the mere fact that the motion [is] unopposed, but, rather, must consider the merits of the motion." United States v. One Piece of Real Property, 363 F.3d 1099, 1101 (11th Cir.2004), citing Dunlap v. Transamerica Occidental Life Ins. Co., 858 F.2d 629, 632 (11 th Cir. 1988) (per curiam).  See also Hibernia Nat'l Bank  v. Administration Central Sociedad Antonima, 776 F.3d 1277, 1279 (5th Cir. 1985) ("a motion for summary judgment cannot be granted simply because there is no opposition...."), citing John v. La. (Bd. of Trustees for State Colleges & Universities), 757 F.2d 698m 709 (5th Cir.1985).  "[T]he district court's order granting summary judgment must 'indicate that the merits of the motion were addressed.'" One Piece of Real Property, 363 F.3d at 1102, quoting Dunlap, 858 F.2d at 632.

While this court is not required to examine every item of evidence before it when considering a motion for summary judgment, it must make certain that the motion is "supported by evidentiary materials." One Piece of Real Property, 363 F.3d at 1101.  At the least, this court must consider all the evidence submitted by the movant in support of its motion. Id., citing Jeroma v. Massey, 873 F.2d 17, 20 (1st Cir. 1989) (per curiam) ("...the district court must review the motion and the

6

supporting papers to determine whether they establish the absence of a genuine issue of material fact.").

The movant must demonstrate an absence of a genuine issue of material fact; if the movant fails to meet this burden, this court may deny the motion, without regard to whether the nonmovant has filed a response. Hibernia Nat'l Bank, 776 F.3d at 1279, citing John, 757 F.2d at 708.

However, if the nonmovant has not supplied the court with a response to any issue of fact, this court may receive the movant's factual account as "a prima facie showing of its entitlement to judgment." Eversley v. Mbank Dallas, 843 F.2d 172, 174 (5th Cir. 1988), citing Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### III.  Relevant Facts[6]

Anthony Pippens began working with the Jefferson County Sheriff's Office on September 3, 1980.  (Ex. 1, Original Appointment Personnel Action Form.)  In or about January 2003, Mike Hale effectively became Sheriff of Jefferson County.

---

[6] Plaintiff Pippens did not oppose the Defendant's motion for summary judgment and did not present disputed facts.  Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the facts are presented in the light most favorable to the Plaintiff.  Facts are undisputed unless otherwise expressly noted.  See Fitzpatrick, 2 F.3d at 1115.

(Compl. ¶39.)  On January 22, 2003, Pippen was reassigned from the Bessemer Enforcement Division to the Birmingham Corrections Division.[7]  (Ex. 2, Administrative Personnel Order dated 1/21/03.)  When Pippens reported for his new assignment on January 22, 2003 he learned that, as Captain, he was assigned to the relief shift, which entailed working varying work schedules.[8]  (Compl. ¶37.)

Plaintiff's reassignment to the Birmingham Corrections Division was not a demotion, but rather a lateral transfer because it did not involve a decrease in compensation.  (Ex. 3, Lindon Aff. ¶4.)  Plaintiff was the least senior Captain at the Birmingham Corrections Division and, with the exception of one, was the least senior of thirteen Captains within the Jefferson County Sheriff's Office.  (Ex. 4, JCSO Captains; Ex. 5, Birmingham Corrections Captains.)  Out of the four Captains assigned to the Birmingham Corrections Division, including Plaintiff, three were white.  (Ex. 5, Birmingham Corrections Captains.)

While off duty, Pippens had campaigned for and supported former Sheriff Jim Woodward for re-election and did the same for Johnnie Johnson in his bid for Sheriff

---

[7] While serving at the Bessemer Enforcement Division, Pippens implemented several programs that improved the division.

[8] Pippens's schedule was as follows: 10:00 p.m - 6:00 a.m. on Wednesday; 2 p.m.- 10:00 p.m., Thursday and Friday; and 6:00 a.m.-2:00 p.m. on Saturday and Sunday.  Plaintiff asserts that this schedule only allowed him four to five hours of sleep on some days before he had to return to work.

against Mike Hale.  (Compl. ¶39.)  In December 2003, Pippens filed a complaint alleging race discrimination and retaliation for his political preference. (Compl.) Plaintiff's claims against Sheriff Mike Hale, in his individual capacity, were dismissed, with prejudice, on May 13, 2004.  (doc. 30.)

## IV.  Applicable Substantive Law and Analysis

### Plaintiff's claims for monetary damages

Plaintiff Pippens alleges discrimination claims against Defendant Hale in his official capacity as Sheriff of Jefferson County, Alabama.  Plaintiff Pippens seeks monetary damages for Defendant Hale's alleged violation of Title VII, § 1981, § 1983, and the First and Fourteenth Amendments.[9]

The Eleventh Amendment bars suits for monetary damages[10] against a state by citizens of that state, unless the state waives its Eleventh Amendment immunity or Congress abrogates said immunity.  <u>Adams v. Franklin</u>, 111 F.Supp.2d 1255, 1262 (M.D. Ala. 2000) (citing <u>Carr v. City of Florence</u>, 916 F.2d 1521, 1524 (11th Cir. 1990)).

---

[9] Plaintiff Pippens seeks monetary damages in the form of back pay, punitive damages, compensatory damages, nominal damages, and liquidated damages.

[10] Eleventh Amendment immunity protects state officials from Sections 1981 and 1983 suits for monetary damages.  However, all actions, including Sections 1981 and 1983, for prospective injunctive relief are outside the protection offered by the Eleventh Amendment. <u>Lassister v. Alabama A & M University</u>, 3 F.3d 1482, 1485 (11th Cir. 1983).

There is neither any evidence in the present action nor any jurisprudence that demonstrates that the State of Alabama has waived its Eleventh Amendment immunity. In addition, "Congress has not abrogated Eleventh Amendment immunity in section 1983 cases." Carr v. City of Florence, Alabama, 916 F.2d 1521, 1525 (11th Cir. 1990). In Alabama, the office of Sheriff is a state constitutional office, vested with the immunities of a state official as an agent or "arm of the state." McMillian v. Monroe County, 520 U.S. 781, 785, 117 S.Ct. 1734, 138 L.Ed.2d1 (1997); see also Alabama Code § 36-22-3. Further, state immunity immunizes the sheriff in his official capacity from liability for money damages. Employees of the Montgomery County Sheriff's Dep't v. Marshall, 893 So.2d 326 (Ala. 2004); Parker v. Amerson, 519 So.2d 442, 442-43 (Ala.1987). A suit against a sheriff in his official capacity is essentially a suit against the State. Id. at 445. Therefore, Plaintiff Pippens's §1983 and §1981 claims against Defendant Hale in his official capacity as the Sheriff of Jefferson County, Alabama are barred by the Eleventh Amendment. Accordingly, Plaintiff Pippens's §1983 and §1981 claims for monetary damages against Defendant Hale in his official capacity are due to be dismissed.

The Eleventh Amendment does not bar Title VII actions against state officials. There is Eleventh Circuit case law that establishes that Congress has abrogated Eleventh Amendment immunity. Specifically, the Eleventh Circuit has held that

Eleventh Amendment immunity does not apply in civil actions invoking Title VII because Congress has clearly expressed its intention that state governments be subject to suit under Title VII.  Allen v. Alabama State Board of Education, 816 F.2d 575 (11th Cir. 1987); see also Cross v. State of Alabama, 49 F.3d 1490, 1502 (11th Cir. 1995).  Congress can abrogate a state's sovereign immunity only if: (a) Congress "unequivocally expressed its intent to abrogate the immunity," through "a clear legislative statement," and (b) Congress has acted "pursuant to a valid exercise of power." In Re: Employment Discrimination Litigation Against the State of Alabama, et al., v. State of Alabama, 198 F.3d 1305, 1317 (11th Cir. 1999)(quoting Seminole Tribe v. Florida, 517 U.S. 44, 55, 116 S.Ct. 1114, 1123, 134 L.Ed.2d 252 (1996).  When Title VII was first enacted in 1964, its coverage was not extended to state and local governments.  In 1972, the statute was amended to include "governments, governmental agencies, [and] political subdivisions.[11]"  42 U.S.C. § 2000e(a).

In Fitzpatrick v. Blitzer, 427 U.S. 445, 447-48, 96 S.Ct. 2666, 2667, 49 L.Ed.2d 614 (1976), the Supreme Court concluded that, [i]n the 1972 Amendments to Title VII of the Civil Rights Act of 1964, Congress acting under § 5 of the Fourteenth

---

[11] The 1972 Amendments retained the right of an individual aggrieved by an employer's unlawful employment practice to sue on his or her own behalf, upon satisfaction of the statutory procedural prerequisites, and made clear that right was being extended to persons aggrieved by public employers.  See 1972 Amendments, § 4(a), 86 Stat. 104, 42 U.S.C. §§2000e-5(a)-(g) (1970 ed., Supp. IV).

Amendment, authorized federal courts to award money damages in favor of a private individual against a state government found to have subjected that person to employment discrimination on the basis of "race, color, religion, sex, or national origin." The Court also stated that "[t]here is no dispute that in enacting the 1972 Amendments to Title VII to extend coverage to the States as employers, Congress exercised its power under § 5 of the Fourteenth Amendment." Id. at 453 n.9, 96 S.Ct. at 2670 n.9. Therefore, Congress abrogated the state's sovereign immunity as it relates to Title VII actions. Accordingly, the Eleventh Amendment does not bar Plaintiff Pippens from receiving monetary damages on his Title VII race discrimination claims should he prevail.

### Plaintiff's race discrimination claims under Title VII, §1981, and the Fourteenth Amendment pursuant to §1983

Plaintiff Pippens alleges race discrimination claims under Title VII, § 1981, § 1983, and the First and Fourteenth Amendments.[12]

---

[12] Section 1981 is a federal law designed to prohibit racial discrimination and Section 1983 prohibits a state actor from acting in violation of federal law. " The Eleventh Circuit clearly provides that where a plaintiff seeks vindication of rights secured by §1981 against a state actor, § 1983 provides the exclusive remedy for obtaining relief." Collier v. Clayton Cmty.Serv. Bd., 236 F.Supp.2d 1345, 1372 (N.D. Ga. 2002) (citing Butts v. County of Volusia, 222 F.3d 891, 893 (11th Cir. 2000)). Therefore, "plaintiff's §1981 claim merges into his claims under §1983." Vason v. City of Montgomery, 240 F.3d 905, 906 n. 1 (11th Cir. 2001). Furthermore, the same framework used to analyze claims under Title VII is also employed in assessing claims of employment discrimination under § 1981 and §1983. See Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998); Abel v. Dubberly, 210 F.3d 1334, 1338 (11th Cir. 2000); Cross v. State of Ala., 49 F.3d 1490, 1507-08 (11th Cir. 1995).

A plaintiff may base a Title VII claim on either direct or circumstantial evidence.  Moore v. Alabama State University, 980 F.Supp. 426 (M.D. Ala. 1997). Plaintiff Pippens has not presented direct evidence of discrimination.  "When a plaintiff has direct evidence of illegal discrimination, he need not make use of the McDonnell Douglas presumption, and conversely, when he does not have such direct evidence, he is required to rely on the McDonnell Douglas presumption." Wright v. Southland Corp., 187 F.3d 1287, 1293 (11th Cir. 1999); See also, Bogle v. Orange County Bd. of County Comm'rs, 162 F.3d 653, 656 (11th Cir.1998); Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1331 (11th Cir.1998); see also Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121, 105 S.Ct. 613, 621-22, 83 L.Ed.2d 523 (1985).

Relying on the McDonnell Douglas framework, Plaintiff Pippens  must establish a prima facie case of race discrimination by showing that: (1) he is a member of a protected class; (2) he suffered an adverse job action; (3) his employer treated similarly-situated employees outside his protected class more favorably; and (4) he was qualified to do the job.  See McDonnell Douglas Corp. v. Green, 411 U.S. at 802; Holifield v. Reno, 115 F.3d  1555, 1562 (11th Cir. 1997) (citations omitted); and  Coutu v. Martin Cty. Bd. of Cty. Commissioners, 47 F.3d 1068, 1073 (11th Cir.1995).  If Plaintiff establishes a prima facie case, the burden shifts to the

Defendant to articulate a legitimate, non-discriminatory reason for the employment action. <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248 (1981).  The Defendant's burden in articulating a legitimate, non-discriminatory reason for its actions is exceedingly light. <u>Id</u>.; see also <u>Meeks v. Computer Assoc. Int'l</u>, 15 F.3d 1013 (11th Cir. 1994).

Plaintiff is a member of a protected class; he is Black.  Plaintiff Pippens alleges that he was subjected to an adverse employment action when he was transferred from the Bessemer Criminal Division to the Birmingham Corrections Division and assigned to work undesirable shifts.  The Defendant relies on <u>Davis v. Town of Lake Park, Florida</u>, 245 F.3d 1232 (11th Cir. 2001) to assert that being reassigned from one division to another does not constitute an "adverse employment action."  In <u>Davis</u>, the Eleventh Circuit established a standard for determining whether an employment action is adverse.  The Court held that to prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a serious and material change in the terms, conditions, or privileges of employment.  245 F.3d t 1239.  Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances. <u>Id</u>.

The Defendant has presented evidence that Plaintiff's reassignment to the

Birmingham Corrections Division was not a demotion, but rather a lateral transfer because it did not involve a decrease in compensation. (Ex. 3, Lindon Aff. ¶ 4.) Although Plaintiff asserted in his complaint that the reassignment limited the amount of sleep he got before returning to work, Plaintiff has not presented evidence to establish that the material terms and conditions of his employment were affected by his reassignment. Hence, Plaintiff has not presented sufficient evidence to establish that he was subjected to an adverse employment action. Even assuming, however, that Plaintiff Pippens can establish that he was subjected to an adverse action, Plaintiff Pippens has not presented evidence that a similarly-situated person outside of the protected class was treated more favorably than him. The Court finds that the Plaintiff has not established a prima facie case of race discrimination based on his reassignment to the Birmingham Corrections Division.

Even if Plaintiff could establish a prima facie case of race discrimination, the Defendant has proffered a legitimate, non-discriminatory reason for Plaintiff's reassignment. The Defendant asserts that its decision to reassign Plaintiff to the Corrections Division and relief shift was based on seniority. Plaintiff was the least senior Captain at the Birmingham Corrections Division and, with the exception of one, was the least senior of thirteen Captains within the Jefferson County Sheriff's Office. (Ex. 4, JCSO Captains; Ex. 5, Corrections Captains.) In addition, the

Defendant provided evidence that out of the four Captains assigned to the Birmingham Corrections Division, including Plaintiff, three are white.  Once the Defendant satisfies its burden of producing a legitimate, non-discriminatory reason, the Plaintiff must show that the Defendant's reason is a pretext for discrimination. Plaintiff Pippens has not produced any evidence to demonstrate that the Defendant's legitimate and non-discriminatory reason is a pretext for discrimination. Accordingly, the Plaintiff  has not established a prima facie case of race discrimination.  The Defendant's motion for race discrimination is due to be granted as to Plaintiff's race discrimination claim.

## Plaintiff's First Amendment Claim pursuant to §1983

Plaintiff Pippens alleges that he was retaliated against in violation of his First Amendment right to political affiliation and political free speech when he was reassigned from the Bessemer Enforcement Division to the Birmingham Corrections Division because he openly supported former Sheriff Woodard and Johnnie Johnson, adversaries of Sheriff Hale, in their campaign for Sheriff.  "Absent some reasonably appropriate requirement, government may not make public employment subject to the express condition of political beliefs or prescribed expression."  O'Hare Truck Service, Inc. v. City of Northlake, 518 U.S. 712, 717, 116 S.Ct. 2353, 2357, 135 L.E.2d 874 (1996).

The Supreme Court has developed two lines of inquiry in order to evaluate which restrictions are "reasonably appropriate": (1) the Elrod-Branti standard for discrimination based on political affiliation and (2) a balancing test for discrimination based on political speech.  See Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); Connick v. Myers, 461 U.S. 138, 147, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983).  In  Branti v. Finkel, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), the Supreme Court rejected the notion that policy makers should be subject to a political affiliation requirement; rather, the Supreme Court found that there is a demand for a showing that the position, policymaking or otherwise, implicates partisan political concerns in its effective functioning.  Under Branti, "the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved."  Id. at 518.   In other words, political fealty could be required of deputy sheriffs whose job duties involved handling information of a partisan political nature.  However, other deputy sheriffs, involved in investigating crimes, patrolling roads, or transporting prisoners, may never deal with such sensitive information or confidence.   After Branti was decided, the Eleventh Circuit decided, in Terry v. Cook, 866 F.2d 373, 377 (11th Cir. 1989), that

17

"loyalty to the individual sheriff and the goals and policies he seeks to implement ... is an appropriate requirement for the effective performance of a deputy sheriff." Therefore, a sheriff may hire and fire deputy sheriffs based on the employee's political patronage, see Cutcliffe v. Cochran, 117 F.3d 1353, 1355 (11th Cir. 1997), and may also promote and demote on this basis.  Silva v. Bieluch, 351 F.3d 1045, 1047 (11th Cir. 2003).

If there are allegations that the expressions involved more than bare statements of support for a candidate, then the claim would deserve the more detailed analysis established by the Supreme Court in Pickering v. Board of Education, 391 U.S. 563 (1968).  See also, Cutcliffe, 117 F.3d at 1358.  Plaintiff Pippens alleges that the Defendant retaliated against him because he openly supported the incumbent, Sheriff Woodard, and another adversary, Johnnie Johnson, in their campaigns for Sheriff. Plaintiff Pippens's acts were not the type of "political expression" that would require protection by the First Amendment and the "open-ended inquiry" established by the Supreme Court in Pickering.  Instead, Plaintiff Pippens's acts amount to only bare statements of loyalty and support.  Plaintiff Pippens alleges that his political expression included his campaign activities and support for former Sheriff Jim Woodard and candidate Johnnie Johnson.  Plaintiff does not allege that he actively criticized Defendant's fitness or that he spoke out on issues of public concern

surrounding the campaign.   See Cutcliffe, 117 F.3d at 1358 ("Had there been allegations that the expressions involved more than bare statements of support for a candidate, the claim would deserve a more detailed analysis under Pickering."); Stough v. Gallagher, 967 F.2d 1523, 1524 (11th Cir. 1992) (treating case in which plaintiff had, at public forum, questioned defendant's fitness for sheriff, under Pickering's free speech analysis).   Furthermore, in Silva v. Bieluch, 351 F.3d 1045 (11th Cir. 2003), the Eleventh Circuit found that deputy sheriffs' participation in campaign advertisements, attendance at political rallies, and participation in "get out the vote" efforts were acts that only demonstrated loyalty and support for the new sheriff's adversary; therefore amounting to nothing more than "bare statements of support for a candidate." Cutcliffe, 117 F.3d at 1358.   Therefore, the Eleventh Circuit held that the plaintiffs did not allege the kind of speech that might require an application of the "open ended inquiry" established by the Supreme Court in Pickering.   The Court finds Plaintiff Pippens's campaign activities and support for former Sheriff Jim Woodard and for Johnnie Johnson amount to only bare statements of loyalty and support.   Accordingly, the Defendant's motion for summary judgment is due to be granted as to Plaintiff Pippens's claim of retaliation in violation of the

First Amendment.

## V.  Conclusion

For the reasons set forth above, the Defendant's motion for summary judgment

is due to be **Granted** as to all of Plaintiff's claims.

**DONE** and **ORDERED** this 7th  day of July, 2006.

_____
_____
**VIRGINIA EMERSON HOPKINS**
**United States District Judge**